Good morning, Your Honors. May it please the Court, Michael McHale for the plaintiff Daniel Snyder. I'd like to reserve three minutes for rebuttal. Arconic admits it fired Mr. Snyder for a single overtly religious comment that was posted on the company intranet page that it deemed a violation of its diversity policy. And the district court nonetheless granted summary judgment for Arconic here on the notion that Snyder failed to show a conflict between his religious practice and an employment requirement. And it based that decision on Mr. Snyder's explanation for the comment, which is that he was just trying to answer a company survey. And rather than post a comment to an article about the survey, thus the judge found that he didn't actually show a religious requirement to post a comment like this online, or comments like this online, sufficient to establish the relevant conflict. But that holding just violates Title VII's straightforward express protection as a prima facie matter for all aspects of religious observance and practice. And by the way, the district court never cited that definition. And at the very least, this case is shot through with evidence that the statement itself by Mr. Snyder was a sincere religious expression, regardless of where it landed. And the fact that the company still made that a factor in its employment decision, at least there's evidence to that effect. And Arconic, or sorry, Snyder, you know, continuously said, I was trying to answer the survey. So the fact you have this awareness. What is the sincerely held religious belief that required him to make the comment? So I have to take issue with your premise there that the test, the law is not limited to required religious expression. Well, what's the religious belief that leads him to make this comment? Right, it's Arconic's promotion of Pride Month with use of the rainbow in violation of Mr. Snyder's understanding of the proper use of the rainbow and his moral, religious, common objection to same-sex marriage and issues of sexuality. But the test is sincere religious expression, or sincere religious practice. It's not religious requirement. And that's right there in the text of the statute, all aspects of religious observance and practice. And this Court's precedent in Brown v. Polk County, Iowa, as well, stands for that proposition. It recognized protection for ad hoc, isolated religious expression in the workplace, even where that expression was not required. The plaintiff there said God expects him to pray for others, but not to proselytize to workers. And the dissent in that case acknowledged or said there's no evidence any of the discreet religious activities were required by his religion. And yet the dissent would not have actually found that to preclude the Title VII claims. It would have just remanded to the district courts for a determination of causation. But that case supports the notion you don't need a religious requirement here. Can I just interrupt here a quick, because we're talking about his statement about the rainbow, but there's more to the statement. I mean, I don't know if it's expressly stated, but if he had just said this is my belief about the rainbow, and I disagree with how it's being used in Pride Month, that's one thing. But he added the part about the abomination of God, and that was the part that the company believed was in violation of their policy. So can you really divorce those? Can you talk about what he said without adding in the part that the company was concerned about? I don't know. You have to, and we're not trying to do that here. So he's including that as part of his religious belief, the part that it's abomination of God? Yes. That's his attestation from the beginning. That's part of his religious belief. It's a very traditional religious view based on the Bible's understanding of same-sex marriage and also the proper use of the rainbow. It's a sincere religious expression. And the EEOC in 29 CFR 1605.1 defines religious practice to include any moral or ethical belief about what is right and wrong and held with the strength of traditional religious views. That's what this is. And didn't he say that he really didn't intend to harm anyone? He's like, I'm not trying to offend anyone, even though it was kind of considered to be an offensive statement. So he's like, I don't want to say that anymore. I didn't mean that. But he said he meant to respond to the survey. So he was never trying to offend anyone like his coworkers because he was trying to respond to the survey. And the fact the company still made it a but-for cause, where there's evidence that that was his sincere religious expression, that comment to the survey. And he told them. What's the difference between the comment to the survey and the comment as it kind of turned out to be? Yeah. Well, it's just that the evidence that what he really was trying to do here was a sincere religious expression. And that conflict element in. But anonymously. But that's an expression of his religion in the workplace. All aspects of religious observance and practice are covered. The conflict element in the prima facie framework, the first element, is really, I think, primarily about making sure what we have here is a bona fide religious practice. And what the district court essentially did was add requirements on top of that. Insofar as he kind of said, you need something ongoing, something that's required. But that's really focused on bona fide religious practice. The EEOC guidance at footnote 52 cites a Seventh Circuit case. A day, yay, or something like that. I might be mispronouncing it. But the Seventh Circuit actually calls it the religious belief element. But I think that gets down to what we're talking about. Is this a bona fide religious practice or a personal preference? And this statement, even if it was intentional to the online article, was a bona fide religious statement. But at the very least, he was insistent from the beginning. He was just trying to answer a survey. Well, let's assume it's a bona fide religious statement. Does that give an employee license to insult other employees? If you have other, you know, many Christians believe that only Christians will be saved. And that all Jews and Muslims and nonbelievers won't be saved. Can you go on a public bulletin board and say all the Jews and Muslims in this company are going to hell? So I think primarily you're in undue hardship category there. There's a chance, though, there could be evidence that's just a personal preference. If there's some serious inconsistency, like we have cases saying, well, I felt required to do this. And it turns out there's evidence to the contrary. But no, we're not, contrary to their, go ahead. Well, no, finish your answer. Contrary to, I think, Arconic's position is we're not claiming some sort of categorical right to offend fellow coworkers. Well, then why is this policy wrong? We're not saying the diversity policy is wrong. Well, what is it they did wrong then? Oh, they fired him based on bona fide religious practice as, you know, factoring the employment decision. Well, how is that different than my, if I say, my sincerely held Christian belief requires me to say that if you're a Jew or a Muslim, you're going to hell? So, again, I think that is more a matter of undue hardship, which the judge said we don't even get to here. And that's usually a fact-intensive question about someone's intent, you know, whether there's a pervasiveness to that that could lead to some sort of hostile work environment. And here Mr. Snyder, from the beginning, said, well, I wouldn't take back his belief, just cinching the bona fides here. He would never even attempt to answer a survey again or a solicitation, given that that's apparently how this whole mess happened in the first place. So he, from the beginning, was not insistent at insulting coworkers. That's what makes this case, I think, really different. But I think your question is ultimately going to undue hardship. You see decisions like the Matthews v. Walmart case out of the Seventh Circuit, just a blatant insult to a conversation insulting a fellow coworker. And the court said, that's an undue hardship. It reaches the razor's edge of hostile work environment liability. We don't disagree. That's not what happened here. It was a sincere bona fide religious practice that was a factor in the employment decision, so prima facie, right there. And then you move to the undue hardship. And after a growth, especially, we think that's a tough burden for Arconic to clear here. But at the very least, that's an issue for trial. So another big thing— So doesn't it have to conflict with something? Your sincerely held belief has to conflict with something that the employer requires. What is that here? Well, it's the fact that company construed it to conflict with its diversity policy. So I think your question is getting at the district judge's point that you kind of need to have a religious requirement to do the kind of thing that violates the policy. But that's not the test. Under Abercrombie, it's a straightforward rule. Did the employer take the employee's religious practice into account as a but-for matter in the employment decision? So that's the conflict. The conflict is—the conflict element of the first prong there really works with the causation prong to make sure that we're really talking about religious practice as a factor in the employment decision. So you're conflating the first prong and the causation prong? I think they work together to confirm that what caused the termination was a religious practice. So here, Arconic said, your sincere religious comment, we construed to violate the diversity policy. And we're going to fire you for that violation. So you have a firing for conflict that was created, or at least resulted from, Mr. Snyder's sincere religious expression. And insofar as he has attested from the beginning that his sincere religious expression was responding to the survey, the fact that it landed on the page, we think, does make a difference. So are you saying he wants to do this again? So this is—OK, it conflicts with that. So he doesn't ever want to do it again? Well, he was, I will say, back against the wall. But he wasn't trying to—in terms of he said he wouldn't even answer a survey again, that seems like a really steep compromise. But at the same time— But it doesn't compromise his sincerely held belief. Right. It doesn't address that. He confirmed that this is a sincere held belief. He wouldn't take back what he said. But if someone is trying to compromise, and this Court in Sturgill recognized compromise might be part of obtaining a reasonable accommodation— What's the accommodation? What would be a reasonable accommodation here? In Brown v. Polk County, this Court talked about it wouldn't be a burden on the company to tolerate the isolated religious expression that occurred. And the cases talk about when you have ad hoc religious expression cases, sometimes toleration can be a form of accommodation, especially where Mr.— So back to the district court, not fire him. Right. For it. So long as that's something he's willing to live with. We're also getting into First Amendment restriction territory here. Like Thomas v.— Yeah, could the company do that? Don't ever say anything about your religion again. And what could be your job? If Mr. Snyder is willing to live with that, right? And he doesn't necessarily say that, but Thomas says it's not up to courts to determine that the line the employee drew or someone drew was logical, understandable, consistent. And Fowler v. Rhode Island says it's not up to courts to determine what is a religious practice. So, yes, if that's something he's willing to live with, Sturgill contemplates that, that compromise could be part of obtaining a reasonable accommodation. And the cases on ad hoc religious expression sometimes involve that. Carter v. Southwest Airlines is another case that's on appeal to the Fifth Circuit. But Professor Bullock recognized that the district court's decision there that there was a prima facie case of failure to accommodate was well within the mainstream of currently existing Title VII law. And that was ad hoc, and it looks like toleration is the possible accommodation. There's nothing else in the briefing. And Southwest is not challenging the on appeal that the plaintiff had, a prima facie case. If I can— Let me—one more question. So given that we've over and over said we don't want to act as a personnel department, right? What's the evidence that this was based on his religious expression as opposed to a violation of the anti-discrimination policy? That gets to Abercrombie. And so long as the company has some kind of awareness that the violation was done for religious reasons, the company can't say, well, we just don't like you violating our policy. Title VII kicks in and says you get favored treatment at that point. So you can't ratchet up the level of general—you can't ratchet up the level of generality and say we're really concerned about just your violation of the policy. You always have to deal with the religious part. Well, I was surprised. I thought your best evidence was the Rodriguez statements, and no argument was made about that, either in the context of the prima facie case or pretext. The only place I saw any reference to the Rodriguez statements was with respect to the— Undue hardship. Yes, exactly. Undue hardship. Thank you. Well, I don't think that's a part of the prima facie test, Your Honor. But you can correct me if I'm wrong, but I guess we didn't understand that to be part of the prima facie test so long as religious— they acknowledged at the Appendix 340 that they were aware this was made for religious reasons. And then we played the case as a failure to accommodate case, and we didn't have direct evidence, that kind of direct evidence until depositions, and we were kind of on a rocket docket. But they acknowledged that he made the comment for religious reasons at the Appendix 340, and that they still fired him for that conduct, and that triggers the prima facie case. If I can reserve my time. You're welcome. Thank you. May it please the Court, Counsel. My name is Mickey Schiltz, and I represent Arconic in this case, and I have conceded some of my time to the EEOC as well. We're asking the Court to affirm the district court in this case. Under the plaintiff's reading of the law, any single comment, if it's based upon religion, should be excused. That would include any statement. Any statement similar to what the gentleman I saw on the news that said, all people must die in jihad, I'm going to go burn the churches. That is an offensive comment. Plaintiff admitted that it was an offensive comment that he made on the intranet. There's no law and no Supreme Court precedent that directs employers to excuse employees from making offensive comments in the workplace, even when they're based upon religion. What if he had just spoken about the rainbow? If he had just said, hey, I don't believe the rainbow should be used like this, I don't know if that would be offensive. We'd have to analyze whether that's an offensive comment under the workplace policy. But when he's saying, hey, you're an abomination to God, you're hateful, you're sinful, and you shouldn't use the rainbow, that is admittedly an offensive statement. And just because it's based upon his religion, the employer does not have to excuse that. It's asking the Court then to act as a super personnel department and say, well, we have to determine how offensive it is to determine whether or not the employer acted appropriately. When you look even at the Brown decision, which the en banc several years ago of this Court looked at, even under Brown versus Polk County, the Court said you can consider religion and you can limit the use of religion in the workplace as long as it's not offending other people. So spontaneous prayer, because it wasn't an offensive comment, was fine. But it was the other type of behavior that was imposing those beliefs or imposing there weren't offensive comments in that case, but imposing that on other people is what the Court said you could limit. And every other case is similar. Abercrombie and Groff don't have any dispute about offensive comments. Those were true accommodation cases, something that the plaintiff in that case believed conflicted with the policy, that they had to either work on Sundays or that they had to wear a headdress. That's not the case here. There's nothing in Mr. Snyder's religious beliefs that conflicted with an actual thing that he was required to do at work. But does he have to show that he was required to do it? Does it have to be a compelled religious belief or practice or statement? I think most of the cases say yes. It's not that they were telling him he couldn't go and object to the use of the rainbow by the company or by a group in the company. He could go and object to the use of the rainbow as long as he's not doing it in an offensive matter that potentially could rise to the level of a hostile work environment. So in this case, could he have prayed in the workplace? Certainly. Could he have talked about, I think the rainbow, Noah brought the rainbow and that's what I believe. I think he could do that as long as it's not offending other people. And he admitted that his statement could be deemed offensive. So employers under Title VII law, looking at everything else, are obligated to protect other employees from offensive behavior. But when you're saying offensive, you're really talking about the policy against harassment? Because you could say, that offends me. He's saying, look, the use of the rainbow by the Pride Month promoters offends me. But I don't think, is that how you're using offense? Or the other way too, the Pride Month folks could say, hey, when you keep talking about Noah and the art, that offends me. Are you using that word to sort of get to the diversity policy, the anti-harassment? Or is there something else you're trying to get at with it? Yes and no. I think it's an offensive, if they're using, if the comment itself is harassing, and maybe harassing is a better use of the word instead of offensive. Because people can be offended all the time, but as long as it's not discriminatory or harassing, then it may not violate their diversity policy. But as long as it's a harassing statement, and it's Arconic's position that that was a harassing statement that was made on the intranet for potentially 13,000 employees to see when they arrived at work the next morning. There's nothing that prohibits him from expressing his true beliefs. I believe that the rainbow was brought by God. Is that harassing? I don't believe that it is. What if it is my religious belief is not in agreement with same-sex marriage? I think that's a fine line as to whether or not that would be harassing or not. And I think the employer in this case would look at whether or not that rose to the level of a harassing comment. And keep in mind in this case, this wasn't the only violation of the diversity policy the plaintiff had made. They weren't taking this in a vacuum, and this was the only thing. Yes, this is ultimately what led to his termination, but the plaintiff had two previous diversity violations. When you look at the other cases, the California case where the individual was putting things on his cubicle, and they said take those down, we don't know the history of that employee. And the employer in that instance said those were offensive, and other people were offended, and if you're not going to take those down, you're going to get terminated. And he did. Employers can reasonably protect other employees from harassing conduct, and that is what Arconic was acting to do in this case. You keep referring to it as harassing conduct. On the flip side of it, where it's not the employer protecting the employee, it's usually the other way around when we see these cases. We often let the juries decide whether a particular conduct is harassing. Even if the employer doesn't discipline the harassing employee and doesn't feel it's harassment, we let the jury make that determination. Now this is kind of the flip side of it. You're saying their argument is they're being overly protective. Does it make a difference? I don't think it makes a difference, Your Honor. I think it is a little bit backwards. This court, every court in the country, the Supreme Court, and every circuit in this case has said that employers are obligated to protect their employees from harassing conduct. And we're not going to act as a super personnel department to determine what that is it is for the jury. But in this case, it is the employer's decision and it's appropriate for the employer to decide what is appropriate and not appropriate in the workplace and to take disciplinary action. What the plaintiff is asking for is a free pass. And he thinks he should have a free pass. I didn't hear from plaintiff in this case, well, how far does that go? When do you not get a free pass? And I think he's asking the court to act as a super personnel department, give him a free pass in this case. Otherwise, he didn't answer the question as to, well, what if I say that all Jews are not going to go to heaven, they're going to go to hell? He didn't answer whether that would be excused, because I think that is a harassing statement. And I think he's saying, you get a free pass no matter what it is, if it's based upon religion. And that's not the law. And there's case after case after case that says that. This isn't an accommodation case. An employer has an obligation to protect its employees from harassing conduct. And when they take action to enforce their neutral policy, it's not a violation of Title VII. And that's what all of the cases say. I would ask that this court... Well, what about the argument that it's not the prima facie case, though, but you get to the hardship issue? That that's what our Polk County case is. You look at it from the... As I read Polk County, if an employee goes into the lunchroom and bows her head and does a silent prayer, we'd say, that's okay. You should accommodate that, even though it's obviously religious. On the other hand, if they go in the lunchroom and say, I'm going to pray now, and all of you who don't pray with me are going to go to hell, then that's a whole different case. But they analyze it as on the hardship prong, not on the prima facie prong. They did, Your Honor. And I don't think you have to get there. Our brief says that. But even under the undue hardship, it would be an undue hardship to subject an employer to super personnel decisions for taking action against a plaintiff or an employee who made an admitted harassing statement to employees, similar to your lunchroom argument as well. Thank you. Thank you, Ms. Schultz. Good morning, Your Honors. Chelsea Sharon for the EEOC as amicus in this case. I'd like to begin by just pointing out a bit of what I perceive to be imprecision and how Mr. Snyder is referring to the conflict element in this case. And that is to distinguish between the content of his comment, which we don't dispute, was based on a sincere religious belief, and the manner in which that comment was expressed, which Mr. Snyder does not appear to dispute, was in conflict with, I'm sorry, was a violation of Arconic's anti-harassment policies. He was terminated for the manner in which it was expressed and not for the content of the comment. Now, with respect to the manner in which the comment was expressed, Mr. Snyder does not claim any level of religious motivation for expressing his comment publicly. To the contrary, he claims that it was merely accidental, which, of course, by definition is an act that is devoid of any motivation, religious or otherwise. So he points to no manner in which Arconic's anti-harassment policies constrained his religious practice because he doesn't claim to have a religious practice or observance of proselytizing, of posting comments of this nature in a public fashion. I'd also like to point out that Mr. Snyder seems to be saying that just because his comment was sincere religious expression or isolated or ad hoc religious expression, that this can be protected. And we don't dispute, of course, religious expression can, in certain circumstances, fall within the scope of Title VII's religious accommodation mandate. But in all of the cases that Mr. Snyder cites, including the Carter case that he mentioned to this court, the religious expression in nature was undertaken pursuant to a religious practice or observance. So, for example, in the motion to dismiss a decision in Carter that he relies on, the judge described Carter's allegations that she felt a religious need to speak out against abortion in any situation in which she was confronted with it. And in that case, that religious expression may well be pursuant to a religious observance or practice. But again, Mr. Snyder does not claim any similar need to speak out, to proselytize, or to make comments of this nature public. Mr. Snyder's formulation seems to be different. Are you arguing for a requirement that the expression has to be required by the religious belief? If so, that seems the exact opposite of what your manual on religious discrimination says. So I want to point out, of course, the relevant test is whether it's a religious observance or practice. The statute, of course, doesn't define those terms. But what our guidance says that you're referring to, I believe, Your Honor, is that the practice doesn't need to be mandated by a tenant of the individual's faith. Correct. In the green brief, you argue almost the exact opposite of that. Your Honor, I think it's important to distinguish. We're not arguing that the official theology of the religion needs to compel the individual to engage in the practice, or even that they need to believe that the official theology compels them. All that we're saying is that in their own scheme of things, in their own personal practice of their religion, they need to feel some level of religious need to engage in the relevant conduct. It can't be that it's merely a personal preference to do so. And we know that from cases like Tiano and Dockman that say that Title VII doesn't protect preferences. We know that from cases like Wilson, in which this court defined the scope of the accommodation requirement by looking to the conduct that she'd undertaken, a religious commitment to perform. So you rely on the fact that he said it was sort of accidentally posted, correct? That's correct, Your Honor. And he, I think, thought he was referring to a survey that would just go to the company privately. That's correct. Wouldn't that, even that private expression to the company, don't you think that had some religious motivation? We're not disputing, Your Honor, that that could very well have a religious motivation, but I want to point out that Snyder has not made a claim that Arconic would have terminated him for engaging in that private religious expression. It's the fact that it was made. If he had, in fact, privately conveyed his views to Arconic management, I don't believe that Arconic has claimed that that would necessarily be a violation of its policies, and Snyder has not said that he would have been terminated for that regardless. You have to look at the conduct for which he was terminated and whether it emanates from a religious practice or observance. With respect to whether it's an expression of a religious belief, why does it matter whether it was accidentally published broader than he intended? It's still an expression of a religious belief. Well, Your Honor, the question is not whether he has it. To be an accident is inherently something that lacks motivation. But you just conceded to me if it was private, it would be an expression of religion. It was just to the company. I don't understand why that changes based on this mistake. It still seems to me that it would be an expression of a religious belief. It may be an expression of a religious belief, but it doesn't conflict with any anti-harassment policy because the anti-harassment policy is aimed— If, in fact, it's private, you mean? Correct, Your Honor. Okay, I get that. Correct, Your Honor. Thank you very much. I appreciate letting me go over my time. Thank you. Rebuttal, Mr. McHale? Thank you, Your Honors. Just a quick response there. The EEOC's counsel said that all cases involving ad hoc, whose expression involved religious requirement, that's directly contrary to Brown v. Polk County. The dissent noted that none of the activity that was ad hoc was actually required by the religion of that person, including his isolated reference to the Bible's teaching against laziness. Our comments counsel said that Mr. Snyder's comments said, you're an abomination. That's not true. And that gets to at least evidence for a jury. He was trying to respond to a company survey, and he said, it's the rainbow is an abomination to God. If it said you're an abomination, that might be more evidence that he was targeting his coworkers. But at the very least, a jury should decide that question. And, Judge McGraw, you're absolutely right on the undue hardship being a jury question when you're talking about harassment. A case that's been cited by various parties here right now would be Tiffany out of Southern District of New York. The worker said, your people, Jews, killed Jesus. And the court found that to be an undue hardship to accommodate. So at the very least, given the evidence that Mr. Snyder is sincere, that he was trying to answer a survey and was fired for that conduct, at the very least, this case should go to a jury. And the district court should be reversed. Thank you, Your Honors. Thank you, Counsel. We appreciate your appearance and briefing and arguments today. The case is submitted, and we will issue an opinion in due course.